UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DENIM HABIT, LLC,

                Plaintiff,                      **ORDER**
  -against-                                       13-CV-6084 (ADS)(SIL)

NJC BOSTON, LLC, STEVEN SIMON,
and DONALD SHAPIRO

                Defendants.
------------------------------------------------------------X

**LOCKE, Magistrate Judge:**

Presently before the Court are two motions to compel the production of damages-related discovery filed by Defendants NJC Boston, LLC ("NJC Boston"), Steven Simon, and Donald Shapiro (collectively, "Defendants"). *See* Docket Entry ("DE") [72], [74]. In the first motion, Defendants seek an Order compelling Plaintiff Denim Habit, LLC ("Plaintiff" or "Denim Habit") to produce documents concerning legal fees and costs that the law firm Brown Rudnick LLP ("Brown Rudnick") charged during the course of representing Denim Habit in this action (the "Legal Fees Motion"). *See* DE [72]. In the second motion, Defendants seek an Order compelling Plaintiff to produce documents responsive to Defendants' February 7, 2014 Request for Production of Documents (the "Document Demand Motion"). *See* DE [74]. For the reasons set forth herein, the Legal Fees Motion and the Document Demand Motion are each granted in part and denied in part.

**I.    BACKGROUND**

The complete factual and procedural background of this action is discussed at length in a November 19, 2015 Memorandum of Decision and Order in which the

1

Honorable Arthur D. Spatt granted Plaintiff's motion for summary judgment (the "Summary Judgment Opinion" or "Sum. J. Op."), and is incorporated herein by reference. *See* DE [54]. Nevertheless, the following facts provide relevant context for the instant motions.

**A. Relevant Facts**

In the 1990s, non-party James Gurrieri created the National Jean Company brand and began selling men and women's clothing at various locations in the state of New York. *See* Sum. J. Op. at 2. In April 2004, Gurrieri and Defendant Steven Simon agreed to establish a franchise system in order to expand the National Jean Company brand to Boston, Massachusetts. *Id.* at 3. Accordingly, an entity known as National Jean Franchise Corporation ("NJ Franchise Corp.") was formed to serve as the corporate franchisor, and Defendant NJC Boston was formed to serve as the corporate franchisee. *Id.* Thereafter, NJ Franchise Corp. and NJC Boston entered into two substantially similar franchise agreements for retail store locations in Newtown Centre, Massachusetts and Wellesley, Massachusetts (the "Franchise Agreements"). *Id.* at 4, 16.

In or about May 2010, Gurrieri sold NJ Franchise Corp. to non-party new owners, and on or about August 19, 2013, those new owners sold NJ Franchise Corp. to Plaintiff Denim Habit.[1]  *Id.* at 18; *see also* Defendants' Motion to Compel

---

[1] Although the August 19, 2013 Asset Purchase Agreement reveals that an entity called Revel Acquisition Group, LLC ("Revel") actually purchased NJ Franchise Corp., *see* DE [72-1], the Court notes that Revel subsequently changed its name to Denim Habit LLC. *See* Defendants' Response to Plaintiff's Revised Statement of Undisputed Material Facts and Counterstatement of Undisputed Material Facts, DE [35-1], ¶ 1. Accordingly, it is undisputed that Denim Habit is the corporate franchisor under the Franchise Agreements.

Production of Information Regarding Legal Fees and Costs ("Legal Fees Mot."), DE [72], Ex. A. Brown Rudnick represented Denim Habit in its purchase of NJ Franchise Corp. *See* Legal Fees Mot. ¶ 6. Upon its purchase of NJ Franchise Corp., Denim Habit became the corporate franchisor under the Franchise Agreements, and NJC Boston remained the corporate franchisee. *See* Sum. J. Op. at 18-19. For reasons discussed at length in the Summary Judgment Opinion, the franchise relationship between Denim Habit and NJC Boston ultimately deteriorated, and on or about October 15, 2013, Denim Habit provided NJC Boston a written notice of termination of the Franchise Agreements. *Id.* at 24-31.

## B. **Procedural Background**

By way of Complaint dated November 1, 2013, Denim Habit commenced this action, seeking: (i) damages for breach of the Franchise Agreements and breach of personal guarantees executed in conjunction with the Franchise Agreements, and (ii) a judgment declaring that the Franchise Agreements were terminated and that NJC Boston was required to comply with the relevant termination provisions contained therein.[2] *See* Compl., DE [1], ¶¶ 30-73. Defendants asserted counterclaims for breach of the Franchise Agreements, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive acts and practices. *See* Countercls., DE [6], ¶¶ 89-101. Relevant for purposes of this action, on May 11, 2015, Denim Habit filed a

---

[2] On January 13, 2014, Plaintiff commenced a second action against Defendant Donald Shapiro, alleging breach of a personal guarantee executed in conjunction with the Franchise Agreements (the "Second Action"). *See Denim Habit, LLC v. Shapiro*, No 14-CV-260 (E.D.N.Y. filed Jan. 13, 2014). On June 19, 2014, the actions were consolidated, and the Second Action was closed. *See* DE [25].

3

motion for summary judgment, seeking: (i) judgment in its favor on its breach of contract and breach of guarantee causes of action, and (ii) dismissal of Defendants' counterclaims. *See* DE [39].

On November 19, 2015, Judge Spatt granted Denim Habit's motion for summary judgment in its entirety. *See* Sum. J. Op. at 62. Judge Spatt noted, however, that "the parties did not specifically brief the issue of damages in connection with this motion, and the prayers for relief in the respective complaints do not allege any precise dollar amount due to the Plaintiff." *Id.* at 55. Accordingly, Judge Spatt referred the matter to this Court to conduct a hearing and provide a recommendation as to the appropriate measure of Plaintiff's damages. *Id.* Thereafter, the Court held status conferences on January 20, 2016 and April 5, 2016, and the parties exchanged damages-related discovery. *See* DE [64], [68]. At the April 5, 2016 status conference, the parties represented that certain discovery disputes existed, and the Court set a briefing schedule on Defendants' anticipated motion to compel. *See* DE [68]. The Legal Fees Motion and the Document Demand Motion followed.

### C. The Motions to Compel

#### 1. Legal Fees Motion

On April 19, 2016, Defendants filed the Legal Fees Motion, seeking production of: (i) each and every communication between Denim Habit and Brown Rudnick with respect to how Brown Rudnick would be compensated for rendering legal services in this matter; (ii) the applicable fee agreements between Denim Habit and Brown Rudnick in connection with this case; and (iii) copies of checks and other documents

4

reflecting payments, if any, on invoices for legal fees and costs in connection with this action. *See* DE [72]. Defendants argue, among other things, that "Brown Rudnick and Denim Habit decided to commence the instant litigation as a way of mitigating damages with respect to the law firm's past errors and/or omissions" in representing Denim Habit. *Id.* at ¶ 16. Specifically, Defendants claim that "Brown Rudnick failed to advise [Denim Habit] to conduct the specific kinds of due diligence that are normally conducted in the acquisition of a franchise company." *Id.* at ¶ 7. Accordingly, Defendants argue that, "in light of the Brown Rudnick–Denim Habit plan, a contingent fee agreement may very well be in existence," and that "such an agreement would impact the award of legal fees and costs in this case." *Id.* at ¶ 16.

In opposition, Plaintiff argues, among other things, that an award of attorneys' fees will be based on Brown Rudnick's legal fee invoices, which have already been produced. *See* Memorandum of Law in Opposition to Defendants' Motion to Compel Production of Information Regarding Legal Fees and Costs ("Pl.'s Legal Fees Opp'n"), DE [73], at 2-3. According to Plaintiff, "Defendants' demands are completely irrelevant and unduly burdensome when there is no dispute over the production of detailed legal bills containing all pertinent information." *Id.* at 2.

  2. <u>Document Demand Motion</u>

On April 26, 2016, Defendants filed the Document Demand Motion, seeking production of documents responsive to five demands contained in Defendants' February 7, 2014 Request for Production of Documents. *See* DE [74]. Specifically, the documents identified in the Document Demand Motion include: (i) Plaintiff's

complete federal and state tax returns from 2013, 2014, and 2015; (ii) "Plaintiff's business reputation"; (iii) "Plaintiff's failure to pay its debts, liabilities, and expenses"; (iv) calculation of the amounts alleged to be due as set forth in a September 11, 2013 demand letter from Plaintiff; and (v) calculation of the amounts alleged to be due pursuant to the Complaint. *Id.* In opposition, Plaintiff explained that certain responsive documents had been produced or were forthcoming, but argued that the remaining requests were vague, overly broad, or irrelevant. *See* Letter in Opposition to Defendants' Document Demand Motion ("Pl.'s Doc. Demand Opp'n"), DE [75].

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Moreover, "[t]he party seeking the discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance."). It

6

is well-established that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

## III. DISCUSSION

Applying the standards outlined above, and for the reasons set forth herein, the Legal Fees Motion and the Document Demand Motion are each granted in part and denied in part.

### A. <u>Legal Fees Motion</u>

Under the American Rule, "it is well established that attorney's fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" *Summit Valley Indus., Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 721, 102 S. Ct. 2112, 2114 (1982) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S. Ct. 1404, 1407 (1967)); *see also United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) ("[P]arties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law."). Here, it is undisputed that the Franchise Agreements provide, in relevant part, that:

> [Defendants] shall bear the costs of enforcement and/or defense (including but not limited to attorneys' fees) [*sic*] any claim or dispute between the parties (including [Defendants] and/or [Plaintiff's] affiliates, related persons/entities, etc.) and will make no claim against

7

> [Plaintiff] with regard thereto, and shall be responsible for the payment of [Plaintiff's] attorney's fees and all costs associated therewith.

Legal Fees Mot. ¶ 2. Accordingly, and Defendants do not appear to dispute, Plaintiff has a basis for arguing that it is entitled to an award of attorneys' fees. As such, information regarding Plaintiff's attorneys' fees is relevant and subject to disclosure.

When an award of attorneys' fees is based on an enforceable contract, the actual amount of the award depends on the contractual language. *See, e.g.*, *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 912 F. Supp. 77, 84-85 (S.D.N.Y. 1996) (scrutinizing the language of a fee-shifting clause when determining an attorneys' fee award). To that end, it is well established under New York law that, "under a contract calling for 'reimbursement' for attorney's fees . . . a party is not entitled to an award exceeding the amount he has actually paid his attorney." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1269 (2d Cir. 1987); *see also Roy, Gene & Ron Kahn v. Taco Bell Corp.*, No. 92 Civ. 6304, 1994 WL 389064, at *4 (S.D.N.Y. July 25, 1994) ("[A] party is not entitled to an award of attorneys' fees exceeding the amount it has actually [paid] its attorney."). In contrast, where a fee-shifting clause neither calls for "reimbursement" of attorneys' fees nor contains other similar indemnifying language, the prevailing party's fee award is not necessarily limited to the amount actually paid. *See Pravin Banker Assocs., Ltd.*, 912 F. Supp. at 85 ("Had the parties intended that payment to [the plaintiff] was contingent upon [the plaintiff's] payment to its law firm, the word 'reimbursement' would have been incorporated into the Agreement.").

However, regardless of the specific contractual language, "[b]ecause a fee-shifting clause can produce perverse incentives for a litigant (and his attorneys), courts must scrutinize fee requests to ascertain whether they are reasonable." *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (internal citation omitted); *see also Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, No. 00 Civ. 5963, 2006 WL 1539341, at *2 (S.D.N.Y. June 5, 2006) ("Although the Indemnity Agreement clearly states that the Indemnitors are liable for [all] attorneys fees and other expenses, those fees must be reasonable in nature.") (internal quotation omitted); *Gen. Motors Corp. v. Villa Marin Chevrolet, Inc.*, 240 F. Supp. 2d 182, 185 (E.D.N.Y. 2002) ("Regardless of whether fees are awarded pursuant to statute or pursuant to contract, the determination of what is a reasonable award is within the sound discretion of the trial court."). Therefore, "a court must determine whether the fee arrangement between the prevailing party and counsel was reasonable, 'or whether it was grossly disproportionate to the arrangement the plaintiff would have been expected to make with counsel in the absence of a fee-shifting agreement.'" *CARCO Grp., Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013) (quoting *F.H. Krear & Co.*, 810 F.2d at 1263); *see also Gao v. Sidhu*, No. 11 Civ. 2711, 2013 WL 2896995, at *5 (S.D.N.Y. June 13, 2013) (observing that, while not dispositive, "the plaintiff's contingency fee agreement is an important factor in determining the reasonableness of the fees").

Here, without determining whether the Franchise Agreements merely provide for "reimbursement" of amounts Denim Habit actually paid to Brown Rudnick or a

reasonable attorneys' fee award irrespective of actual payments, the Court concludes that Denim Habit and Brown Rudnick's fee agreement, as well as evidence of payments made thereunder, is relevant to the reasonableness of the fees sought and is therefore discoverable. Although it is undisputed that Plaintiff has produced Brown Rudnick's legal invoices from February 27, 2014 through October 23, 2015, Defendants argue that "a contingent fee agreement may very well be in existence," and that "[s]uch an agreement would impact the award of legal fees and costs in this case." *See* Legal Fees Mot. ¶¶ 3, 4, 16. Indeed, in *F.H. Krear & Co.*, where an attorneys' fee award was based on an a fee-shifting contractual provision, the fee agreement was relevant, as the court held that an award calculated by hourly billing was unreasonable "in light of the one-third contingent fee arrangement [the] plaintiff in fact made with [its attorney] . . . ." 810 F.2d at 1264. Therefore, the fee arrangement between Denim Habit and Brown Rudnick is relevant in determining an appropriate attorneys' fee award in this action. Likewise, evidence of the amounts that Denim Habit has actually paid to Brown Rudnick is relevant to the reasonableness of the claim, and is therefore discoverable in determining an appropriate award. *See Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2016 WL 817440, at *4 (S.D.N.Y. Feb. 22, 2016) ("[I]t is relevant, although not dispositive, that the rates sought were actually paid by plaintiffs."); *Triumph Constr. Corp. v. New York City Council of Carpenters Pension Fund*, No. 12 Civ. 8297, 2014 WL 6879851, at *4 (S.D.N.Y. Dec. 8, 2014) ("The Court finds that Respondents'

proposed hourly rates are reasonable because . . . they reflect rates that were actually paid . . . .").

In opposition, Plaintiff argues that Brown Rudnick's legal invoices, which contain all relevant information, "will be presented at a hearing through witness testimony, [and] indicate the legal fees incurred as a result of this action." Pl.'s Legal Fees Opp'n at 2. Nevertheless, as discussed above, and even accepting Plaintiff's argument as true, "the actual billing arrangement is a significant, though not necessarily controlling, factor" in determining a reasonable fee. *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001). Accordingly, the relevance of Denim Habit and Brown Rudnick's fee agreement, as well as evidence of payments made thereunder, outweighs the burden of producing such information.

Notwithstanding the foregoing, Defendants have failed establish that the relevance of "each and every communication between Denim Habit and Brown Rudnick with regard to how Brown Rudnick would be compensated" outweighs the burden of producing each such communication. *See* Legal Fees Mot. ¶ 1. To that end, the information contained in any such communications that would be relevant in determining an appropriate fee award would be included in the relevant fee agreement, as well as records of payments made thereunder. Therefore, Plaintiff is not required to produce communications regarding the manner in which Brown Rudnick would be compensated. *See Malev Hungarian Airlines v. United Techs. Int'l Inc.*, 964 F.2d 97, 102 (2d Cir. 1992) (holding that the court may limit discovery where the discovery sought is "obtainable from some other source that is more convenient,

less burdensome, or less expensive"); *Bellinger v. Astrue*, No. 06-CV-321, 2009 WL 2496476, at *4 n.4 (E.D.N.Y. Aug. 14, 2009) (holding that a request for disclosure should not be sustained where the information sought can be or has already been obtained through "some other source that is more convenient, less burdensome, or less expensive").

Based on the foregoing, Defendants' Legal Fees Motion is granted in part and denied in part. Within fourteen days of the date of this Order, Denim Habit must produce its fee agreement with Brown Rudnick in relation to this matter, as well as evidence reflecting invoiced amounts to the extent not already produced and actual payments made to Brown Rudnick in connection with this matter.

### B. Document Demand Motion

As described above, in the Document Demand Motion, Defendants seek an Order compelling disclosure to five requests contained in their February 7, 2014 Request for Production of Documents. *See* Doc. Demand Mot. at 2. The Document Demand Motion is granted in part and denied in part to the extent described herein.

1. Request 14

In Request 14, Defendants demand "Plaintiff's complete 2013, 2014, and 2015 federal and state tax returns, including, but not limited to, pertinent Statements and K-1 forms." *See* Doc. Demand Mot. at 2. It is "well-settled that tax returns in the possession of the tax payer are not immune to civil discovery." *Sabatelli v. Allied Interstate, Inc.*, No. 05-CV-3205, 2006 WL 2620385, at *1 (E.D.N.Y. Sept. 13, 2006) (internal quotation omitted). However, "[d]iscovery of tax returns requires

satisfaction of a higher standard than discovery of other documents." *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 368 (S.D.N.Y. 2010). Therefore, courts compel disclosure of a party's tax returns "in civil cases only upon a two-part showing: '(1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not otherwise readily obtainable.'" *Garcia v. Benjamin Grp. Enters., Inc.*, No. 09-CV-2671, 2010 WL 2076093, at *1 (E.D.N.Y. May 21, 2010) (quoting *Carmody v. Vill. of Rockville Centre*, No. 05-CV-4907, 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007)).

As an initial matter, Plaintiff claims that it has "produced Denim Habit's Returns on Partnership Income for the years 2013 and 2014." *See* Pl.'s Doc. Demand Opp'n at 2. Defendants argue, however, that these returns are "incomplete copies." *See* Doc. Demand Mot. at 2. With respect to Denim Habit's 2015 tax returns, Plaintiff's counsel has "contacted [their] client to determine whether these documents are available at this time." *See* Pl.'s Doc. Demand Opp'n at 2 n.3. Because Plaintiff does not appear to dispute the relevance of the demanded tax returns, Plaintiff is instructed to produce them within fourteen days of the date of this Order. For the sake of clarity, Plaintiff is also required to provide its corresponding "pertinent Statements and K-1 forms" to the extent they are not included in the tax returns. *See* Doc. Demand Mot. at 2; *see also Dunkin Donuts Franchised Rests. LLC v. Grand Cent. Donuts, Inc.*, No. 07-CV-4027, 2009 WL 973363, at *3 (E.D.N.Y. Apr. 9, 2009) (compelling production of "copies of any Schedule B and Schedule K-1" with production of tax returns). In the event the 2013 and 2014 tax returns are complete,

13

Plaintiff need only confirm this in writing, and need not reproduce the same documents.

Based on the foregoing, Defendants' Document Demand Motion is granted with respect to Request 14.

2. Requests 46 and 48

In Request 46, Defendants demand "Plaintiff's business reputation," but fail to specify any actual documents or information they seek. *See* Doc. Demand Mot. at 2. Likewise, in Request 48, Defendants demand "Plaintiff's failure to pay its debts, liabilities, and expenses," but again fail to specify any actual documents or information they seek. *Id.* Plaintiff opposes Requests 46 and 48 on the grounds that they are vague, overly broad, and irrelevant, and because "Defendants offer[] neither a description of which documents [they are] requesting nor an explanation of the basis of [their] request." *See* Pl.'s Doc. Demand Opp'n at 1 nn.1-2. Because it is unclear what information Defendants seek in Requests 46 and 48, Plaintiff's objection is sustained, and Defendants' Document Demand Motion is denied with respect to Requests 46 and 48. *See Iijima v. City of New York*, No. 13-CV-2688, 2015 WL 1402819, at *4 (E.D.N.Y. Mar. 25, 2015) (denying motion to compel where the request was "so vague as to be incomprehensible"); *Kennedy v. Contract Pharmacal Corp.*, No. 12-CV-2664, 2013 WL 1966219, at *2 (E.D.N.Y. May 13, 2013) (denying motion to compel where "[t]here [was] no specificity to the requests and no effort to limit [the] requests to any relevant acts alleged in [the] action"); *Simmons v. Adamy*, No. 08-CV-

14

6147L, 2011 WL 839739, at *2 (W.D.N.Y. Mar. 7, 2011) (denying motion to compel where "the interrogatory [was] otherwise incomprehensible").

### 3. Requests 50 and 51

In request 50, Defendants demand "calculation of the amounts alleged to be due as set forth in Plaintiff's demand letter of September 11, 2013." *See* Doc. Demand Mot. at 2. In request 51, Defendants demand "calculation of the amounts alleged to be due pursuant to the Complaints." *Id.* According to Plaintiff, Defendants only recently produced relevant documents necessary to compute damages, including documents concerning, among other things, gross revenue, itemized by month and by retail location. *See* Pl.'s Doc. Demand Opp'n at 2. Accordingly, Plaintiff states that it was "only recently able to begin devising a 'calculation of damages,' which will be provided shortly . . . ." *Id.* Plaintiff further notes that, at the April 5, 2016 status conference, the Court set a June 1, 2016 deadline for pretrial disclosures. *Id.* Based on Plaintiff's representation that a calculation of damages is forthcoming, Defendants' Document Demand Motion is granted with respect to Requests 50 and 51, and Plaintiff is directed to provide a calculation of damages within fourteen days of the date of this Order.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Legal Fees Motion and Document Demand Motion are each granted in part and denied in part. Within fourteen days of the date of this Order, Plaintiff must produce: (i) the fee agreement between Denim Habit and Brown Rudnick in connection with this action; (ii) evidence of payments, if

15

any, that Denim Habit made to Brown Rudnick with respect to this action; (iii) Denim Habit's 2013, 2014, and 2015 tax returns, including any "pertinent Statements and K-1 forms"; and (iv) a calculation of Denim Habit's alleged damages.

Dated: Central Islip, New York
May 23, 2016

**SO ORDERED**

  /s Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge